UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**MICHAEL DAVIS**

     **Petitioner,**

**v.**                     **Case No. 8:16-cv-2793-CEH-MRM**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**
_____/

## O R D E R

This cause comes before the Court on Michael Davis's petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Davis challenges his state convictions for sexual battery on a person less than twelve years of age and sexual activity with a child. Upon consideration of the petition (Doc. 1), the response (Doc. 8), the reply (Doc. 11), the supplemental response (Doc. 18), and the reply (Doc. 20), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, the petition will be **DENIED**.

## Procedural background

Davis was charged with one count of sexual battery on a person less than 12 years of age and one count of sexual activity with a child. (Doc. 19-1, Ex. 3) During

a pretrial *Williams* Rule[1] hearing, the trial judge determined that testimony from the victim's older brother, C.D., about an earlier unrelated sexual battery committed by Davis on C.D. was admissible under state law because it was sufficiently similar to the charged offenses.[2]  (Doc. 19-3, Ex. 46 at 201–02)  C.D. testified at trial as a *Williams* Rule witness about the sexual act Davis perpetrated against him.

A jury convicted Davis of both charges and he was sentenced to life imprisonment on Count I and to a concurrent term of thirty years imprisonment on Count II.  The state appellate court affirmed Davis's convictions and sentences and affirmed the denial of his state Rule 3.850 motion for post-conviction relief.  (Doc. 19-1, Exs. 16, 36)  The state appellate court also denied each of Davis's state habeas petitions alleging the ineffective assistance of appellate counsel.  (Doc. 19-3, Exs. 40, 43)

## <u>Standard of Review</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

---

[1] The *Williams* Rule is based on the holding in *Williams v. State*, 110 So.2d 654 (Fla. 1959). *See also* § 90.404(2)(a), Fla. Stat.

[2] C.D. testified at the *Williams* Rule hearing that when he was eleven or twelve years old, he and Davis were in the garage at their home. Davis told C.D. "that there should be nothing between us so we should take all of our clothes off, and so we did that. And then after we talked for, you know 10-15 minutes he proceeded to put his mouth on my penis." (Doc. 19-3, Ex. 46 at 176) The victim, D.D. (C.D.'s younger brother), testified at trial that when he was nine or ten years old, Davis began putting his mouth on D.D.'s penis and that the molestation continued from when D.D. was nine years old until he was twelve years old. (Doc. 19-4, Ex. 49 at 237, 264)

deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied - - the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and

4

'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court affirmed Davis's convictions and sentences. (Doc. 19-1, Ex. 16)   The state appellate court's affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court.

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 563 U.S. at 181–82.  Davis bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a

factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## Standard for Ineffective Assistance of Counsel

Davis claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Davis must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Davis must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Davis cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Under 28 U.S.C. § 2254(d) Davis must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (a petitioner must overcome this

8

"'doubly deferential' standard of *Strickland* and [the] AEDPA"), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is 'doubly deferential.'"), *cert. denied*, 134 S. Ct. 191 (2013).

**Ground One**

Davis contends that his trial counsel rendered ineffective assistance by not investigating and presenting to the trial court (1) investigative reports from the Department of Children and Families ("DCF") and (2) a recorded interview C.D. gave to the Child Protection Team ("CPT"). Davis argues that both the DCF reports and the CPT interview would have shown C.D.'s lack of credibility, which would have caused the trial court to exclude him as a *Williams* Rule witness. The Respondent argues that Ground One is procedurally barred from federal review. (Doc. 8 at 14–15; Doc. 18 at 3–5)[3] Davis argues entitlement to a merits review of his claim of ineffective assistance of trial counsel under *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). (Doc. 11 at 2; Doc. 20 at 2)

**Claim 1 - DCF reports**

---

[3] The page numbers of the exhibits cited in this Order are those assigned by CM/ECF.

Davis alleges that his trial counsel rendered ineffective assistance by not presenting to the trial court the DCF reports that contained information about previous allegations of molestation made by C.D. against Davis that were determined to be unfounded.  He further argues that "[a] reasonable probability exists that, had counsel investigated the DCF reports which contained the chronological notes report and identified the DCF investigator and had presented these available documents in a [second] subsequent *Williams* Rule hearing, the court would have been compelled to rescind its prior ruling, declare C.D. to be unreliable due to prior false allegations, and rule[d] C.D.'s testimony inadmissible."  (Doc. 1 at 19)  The Respondent correctly argues that, although Davis raised this claim in state court in his Rule 3.850 motion, he did not appeal the denial of the claim, rendering the claim unexhausted.  (Doc. 8 at 14–15)

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."  *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999).  To show prejudice, a petitioner must demonstrate not only that an error at the trial created the possibility of prejudice, but that the error worked to his actual and substantial disadvantage and infected the entire trial with "error of constitutional dimensions."  *United States v. Frady*, 456 U.S.

10

152, 170 (1982).   In other words, a petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892.

Absent a showing of cause and prejudice, a petitioner may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a "fundamental miscarriage of justice."  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986).  A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet the "fundamental miscarriage of justice" exception, a petitioner must show constitutional error coupled with "new reliable evidence—whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial."  *Schlup*, 513 U.S. at 324.

*Martinez* recognizes a narrow exception to the exhaustion requirement announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), for a claim of ineffective assistance of trial counsel.  *Martinez* holds that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  566 U.S. at 17.  *Trevino* expanded *Martinez's* exception to states that effectively prohibit

11

defendants from raising ineffective assistance of counsel claims on direct appeal. 569 U.S. at 429.

Davis's failure to challenge on appeal the denial of this claim of ineffective assistance of counsel results in abandonment, rendering the ground unexhausted. Fla. R. App. P. 9.141(b)(3)(C); *see Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)[4] (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion). Davis cannot return to state court to file an untimely collateral appeal challenging the denial of this ground. Fla. R. Crim. P. 3.850(k). Consequently, claim 1 is procedurally defaulted.

To the extent that Davis relies on *Martinez* to overcome the default of this claim, he cannot prevail. *Martinez* expressly excludes error arising from appeal in initial-review collateral proceedings from its holding:

> The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *See* 501 U.S., at 754, 111 S. Ct. 2546; *Carrier*, 477 U.S., at 488, 106 S. Ct. 2639. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Martinez*, 566 U.S. at 16. Davis otherwise fails to satisfy the cause and prejudice exception to excuse the default. He cannot meet the "fundamental miscarriage of

---

[4] Unless later superseded by Eleventh Circuit precedent, a Fifth circuit decision issued before October 1, 1981, binds this Court. *Bonner v. City of Prichard*, 661 F.2d 206, 1207 (11th Cir. 1981) (*en banc*).

justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Davis satisfies neither exception to procedural default, claim 1 is procedurally barred from federal review.

**Claim 2: CPT interview**

Davis alleges that his trial counsel rendered ineffective assistance by not investigating and obtaining a copy of the CPT interview. Davis argues that in a separate unrelated case alleging that C.D. had been molested by his great uncle,[5] C.D. stated in a recorded interview that Davis "had gotten naked with him in the garage but denied that Mr. Davis performed oral sex on him or requested that anal sex be performed on him." (Doc. 1 at 9) The gravamen of Davis's claim is that his trial counsel knew before the trial that the recording existed and should have obtained a copy of it in order to move for reconsideration of the trial court's ruling on the admissibility of C.D.'s testimony under the *Williams* Rule. (Doc. 19-6, Ex. 56 at 53–54)

Davis argued in his Rule 3.850 motion that his trial counsel rendered ineffective assistance by not investigating and presenting the DCF reports but did not challenge counsel's failure to obtain the CPT interview. The state post-conviction court granted Davis an evidentiary hearing on certain grounds of his Rule 3.850 and appointed him post-conviction counsel. At the start of the evidentiary hearing the State argued that the claim of ineffective assistance of counsel as to the CPT interview was not included

---

[5] The great uncle was tried and convicted in a separate case. (Doc. 19-5, Ex. 50 at 138, 142)

in the Rule 3.850 motion and, therefore, was untimely and procedurally barred. (Doc. 19-6, Ex. 56 at 44–47)  Post-conviction counsel argued that the post-conviction motion asserted trial counsel's alleged failure to investigate and present additional evidence regarding the *Williams* Rule witness (C.D.) and that this generalized allegation included investigating not only the DCF reports but should have been interpreted to include the CPT interview.  (*Id.* at 51–54, 66–72)  The post-conviction judge concluded the CPT interview would be excluded because "[i]t is outside of the grounds for relief . . . that were alleged by the Defendant as far as Ground Number 1 is concerned." (Doc. 19-6, Ex. 56 at 77)  The judge denied Davis's subsequent motion for reconsideration and denied his motion to amend the Rule 3.850 motion as untimely.  (Doc. 19-6, Ex. 57 at 87–88)  Accordingly, because Davis has not properly presented this claim to the state court, the claim of ineffective assistance of counsel is unexhausted.  Davis cannot return to state court to raise the unexhausted claim in an untimely post-conviction motion. *See* Fla. R. Crim. P. 3.850(b).  Consequently, the exhaustion requirement remains unsatisfied, rendering the claim procedurally defaulted.  Davis argues entitlement to a merits review under *Martinez*.

Davis fails to show that his claim is "substantial."  During the *Williams* Rule hearing the judge concluded (Doc. 19-3, Ex. 46 at 201–03):

> I think that the cases are sufficiently similar to be admissible under Williams Rule but I am a little bit concerned if -- I haven't heard any evidence to support this at this point, though. It's just been based on [counsel]'s argument about it. But the only evidence I've heard, although there was a little bit of confusion about it and it's one of the reasons I

went back and asked him some questions myself to try to clarify what he was really saying.

If, for example, he -- I didn't hear any evidence from any police officer or anybody else that he never told them about the defendant putting his mouth on his penis to the police. He says he did report that to them and to DCF and he gave a written statement when he was interviewed at the police station in the presence of a police officer and the DCF investigator and did acknowledge that.

So, based on what he's testified here today, I would consider that to be admissible as Williams Rule evidence, similar fact evidence under the relaxed standards of the applicable statute and the Evidence Code here because it involves a child sexual molestation type of situation here. But, you know, if there is some question about whether that really ever happened, I mean, obviously that goes to the probative nature of it and the credibility of that witness.

And if it gets to the point where his credibility is so lacking that its probative value is diminished to that extent as compared with its prejudicial impact, I might have to reconsider it then. But from what I've heard today I would have to grant the State's request and allow it to be admitted into evidence.

. . . .

I haven't heard any evidence to the contrary yet.

[COUNSEL]: Okay. And this is just a position that the Defense would be taking is that in light of your ruling today as the trial approaches if there is --

THE COURT: Now, I guess you can file a Motion in Limine --

[COUNSEL]: Right.

THE COURT: -- and put on evidence to support it.

[COUNSEL]: Okay.

15

> THE COURT: You know, and if it's supported by some other evidence then I would have to reconsider this. But right now I'd have to rule in favor of the State. I think that would be the only way to deal with it. Now, if the Defense wants to, you know, make some affirmative effort to try to keep it out then I will consider it. But right now I think I'd have to allow it.

After the *Williams* Rule hearing, a different judge was assigned to the case for trial.   Counsel did not move for reconsideration of the admissibility of C.D.'s testimony or otherwise move to present the contents of the CPT interview to the state court before the trial.

Even assuming that counsel performed deficiently by not moving for reconsideration, Davis does not establish prejudice.   The victim's testimony of repeated molestation by Davis over an approximately two-year period was largely unchallenged.  (Doc. 19-4, Ex. 49 at 236–68)  In addition, the State presented at trial Davis's statement to the police in which he admitted to drinking heavily and that it was possible that the molestation could have occurred while he was under the influence of alcohol.  (Doc. 19-5, Ex. 50 at 98–110)  Consequently, even if trial counsel had performed as Davis suggests she should have, he fails to show that the outcome of the trial would have been different.  Because Davis does not establish that his claim of ineffective assistance of trial counsel has "some merit," he cannot establish that the claim is "substantial" under *Martinez* to satisfy the cause and prejudice exception to procedural default.   *See Clark*, 988 F.3d at 1331.   He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that

he is actually innocent.  *Schlup*, 513 U.S. at 327.  Because Davis satisfies neither exception to procedural default, this claim of ineffective assistance of counsel is procedurally barred from federal review.

**Ground Two**

Davis contends that his trial counsel rendered ineffective assistance by (1) not requesting a special jury instruction on collateral crime evidence before C.D. testified at trial, (2) not requesting that that instruction be included in the final jury instructions, and (3) not objecting to the trial court's failure to give the instruction.  Davis argues that "counsel was constitutionally ineffective for not demanding that the instruction be given at the close of the evidence where it [is] a final jury instruction." (Doc. 1 at 38)  He further argues that "[t]o not give this instruction denied Petitioner fundamental fairness of a fair trial" and "[f]or counsel to not even request that the court instruct the jury Petitioner was not on trial for the allegations made by the *Williams* Rule witness was grossly negligent and constitutionally ineffective." (*Id.*)  Davis argues that if "[t]rial counsel had requested the instruction and/or the instruction been given at the close of the evidence there is a reasonable probability the outcome would have been different where the testimony of the similar crime witness was used to corroborate the victim in this case." (Doc. 1 at 41)  The Respondent argues that this ground is procedurally barred.  Davis admits that he did not exhaust this ground in state court but asserts entitlement to a merits review under *Martinez*.

The record shows that trial counsel did not request a jury instruction on collateral crime evidence before C.D. testified at trial. (Doc. 19-4, Ex. 49 at 290)

During the charge conference the trial judge inquired of counsel about including the

instruction in the final instructions to the jury (Doc. 19-5, Ex. 51 at 529–30):

> [TRIAL COUNSEL]: We're still going to be doing the
> evidence of other crimes?
>
> THE COURT: Well, that's actually the Williams Rule
> instruction. Now, actually that instruction normally if
> somebody asks me to do that I normally would read that
> prior to the testimony of --
>
> [TRIAL COUNSEL]: [C.D.].
>
> THE COURT: -- of [C.D.]. I was not asked to read that
> instruction. I will say this for the record. A lot of times
> lawyers don't want me to read that instruction because it
> just highlights the testimony. I have had -- you know, unless
> it's asked of me, I don't necessarily read it. Do you want me
> to read it in the final instructions, [trial counsel]? Is that
> what you're asking me to do?
>
> [TRIA: COUNSEL]: No, I was just concerned whether or
> not -- because that was in the original packet.
>
> THE COURT: I think [the prosecutor] provided it because
> it is an instruction that if it's asked for can be read prior to
> testimony of a Williams Rule witness. I do know that a lot
> of lawyers don't like it read.
>
> [TRIAL COUNSEL]: Right.
>
> THE COURT: Because it highlights that testimony even
> more. And I'm assuming because you didn't ask me to read
> it that's why you didn't want me to read it. Is that correct?
>
> [TRIAL COUNSEL]: Yes.
>
> THE COURT: That's a strategic decision you made,
> correct?
>
> [TRIAL COUNSEL]: Yes.

> THE COURT: At that point, I don't think there's any place to put it in the final. It's not really a final jury instruction. Any other instructions anybody has that we would need to talk about?
>
> [TRIAL COUNSEL]: None from defense, Your Honor.

Trial counsel must decide which strategic and tactical option to pursue. A petitioner must overcome the presumption that counsel's conduct was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler*, 218 F.3d at 1314. *See also, Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.").

Davis does not show that counsel's chosen trial strategy, viewed objectively, was so "patently unreasonable that no competent attorney would have chosen it." *Dingle*, 480 F.3d at 1099. *See also Wood v. Allen*, 542 F.3d 1281, 1309 (11th Cir. 2008), *aff'd* 558 U.S. 290 (2010) ("[O]ther attorneys might have done more or less . . . or they might have made the strategic calls differently, but we cannot say that no reasonable

attorney would have done as [counsel] did."). Davis presents no evidence establishing that a reasonable probability of acquittal exists absent counsel's failure to request a *Williams* Rule instruction. Because Davis fails to show that his ground of ineffective assistance of trial counsel has "some merit," he cannot establish that the ground is "substantial" under *Martinez* to satisfy the cause and prejudice exception to procedural default. He cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*, 513 U.S. at 327. Because Davis satisfies no exception to procedural default, Ground Two is procedurally barred from federal review.

Accordingly, Davis's petition for the writ of habeas corpus (Doc. 1) is **DENIED**. The Clerk is directed to enter a judgment against Davis and **CLOSE** this case.

### DENIAL OF BOTH A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

IT IS FURTHER ORDERED that Davis is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability ("COA"). Section 2253(c)(2) limits the issuing of a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Davis must show that reasonable jurists would find debatable both (1) the merits of the underlying

claims and (2) the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Davis is entitled to neither a certificate of appealability nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Davis must obtain permission from the circuit court to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida on November 29, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Michael Davis, pro se